IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| KEVIN STRUSS; <br> STRUSS FARMS, L.L.C.; and <br> STRUSS & COOK FARMS, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF <br> AGRICULTURE; <br> RISK MANAGEMENT AGENCY; and <br> FEDERAL CROP INSURANCE <br> CORPORATION, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. 18-2184-JWL |

## **MEMORANDUM AND ORDER**

Plaintiffs seek judicial review of defendants' Final Agency Determination (FAD-277) under 5 U.S.C. § 706, a provision of the Administrative Procedures Act (APA), and the parties have submitted the matter for decision by the Court on written briefs (Doc. ## 21, 27, 30) based on the administrative record.  For the reasons set forth below, the Court concludes that defendants' action in issuing FAD-277 was not arbitrary or capricious, and the Court therefore denies plaintiffs' request to set aside that action.  Judgment will therefore be entered in favor of defendants in this matter.

I. **Background**

Defendant Federal Crop Insurance Corporation (FCIC) and defendant Risk Management Agency (RMA) are agencies of defendant United States Department of Agriculture (USDA). FCIC administers a program of crop insurance under the Federal Crop Insurance Act (FCIA), 7 U.S.C. §§ 1501 *et seq*. FCIC issues crop insurance policies and also provides reinsurance for policies issued by private insurance companies known as approved insurance providers (AIPs). RMA administers the program on behalf of FCIC. For purposes of this case, there is no distinction between FCIC and RMA.

Defendants have issued regulations to carry out this program of crop insurance. One such regulation, 7 C.F.R. § 457.8, sets out certain terms, known as the Basic Provisions, that must be included in and govern any policy under the program. Other regulations provide that a program participant may request a final agency determination (FAD) by which FCIC interprets the FCIA or the authorized regulations. *See* 7 C.F.R. §§ 400.765-400.768.

In 2016, plaintiffs suffered losses with respect to their corn crop, and they submitted claims to an AIP under seven crop insurance policies subject to the federal program. According to plaintiffs' complaint in this matter, the AIP denied the claims because plaintiffs failed to provide certain production records for corn that they were able to harvest and sell. Plaintiffs requested an FAD interpreting the applicable Basic Provisions from the regulations. On January 16, 2018, defendants issued FAD-277, in which they rejected plaintiffs' proposed interpretation. Plaintiffs exhausted administrative remedies and subsequently filed the instant action seeking judicial review of FAD-277.

## II. Governing Standards

Plaintiffs seek review under 5 U.S.C. § 706(2)(A), which provides that the reviewing court shall hold unlawful and set aside any agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See id.* The Court's review under that standard is "highly deferential." *See Citizens' Committee to Save Our Canyons v. Krueger*, 513 F.3d 1169, 1176 (10th Cir. 2008). The reviewing court ascertains whether the agency considered the relevant factors and articulated a rational connection between any facts found and the decision made, and whether the agency made a clear error of judgment. *See id.* "A presumption of validity attaches to the agency action and the burden of proof rests with the [parties] who challenge such action." *See id.* (quoting *Colorado Health Care Ass'n v. Colorado Dept. of Soc. Servs.*, 842 F.2d 1158, 1164 (10th Cir. 1988)).

In the present case, the agencies did not find facts but simply interpreted their own regulation. When an agency interprets its own regulation, the reviewing court defers to that agency interpretation "unless that interpretation is plainly erroneous or inconsistent with the regulation." *See Decker v. Northwest Environmental Defense Center*, 568 U.S. 597, 613 (2013) (internal quotation and citations omitted). The reviewing court will also defer to the agency interpretation if there is no indication that the agency's current view "is a change from prior practice or a *post hoc* justification adopted in response to litigation." *See id.* at 614 (internal quotation and citation omitted). "It is well established that an agency's interpretation need not be the only possible reading of a regulation – or even the best one – to prevail." *See id.* at 613.

3

### III. Analysis

The reviewed agency determination, FAD-277, addressed Section 14 of the Basic Provisions, 7 C.F.R. § 457.8 sec. 14, which sets forth certain duties of the insured and the AIP in the event of a loss. *See id.* Section 14(e)(4) states that in order to receive any indemnity under a policy, the insured must "provide" "[a] complete harvesting, production, and marketing record of each insured crop by unit including separate records showing the same information for production from any acreage not insured;" certain other records; and any other information required to settle the claim. *See id.* sec. 14(e)(4)(i). Section 14(e)(4) also imposes duties on the insured to cooperate with the AIP in the investigation or settlement of the claim, including by providing any records requested; to establish the total production or value received for the insured crop and to establish that the insured has complied with all provisions of the policy; and to submit to an examination under oath upon request. *See id.* sec. 14(e)(4)(ii)-(iv). Section 14(e)(5) states as follows: "Failure to comply with any requirement contained in section 14(e)(4) will result in denial of the claim . . . ." *See id.* sec. 14(e)(5).

In requesting an FAD, plaintiffs presented the following question:

> Is the denial of a claim under Sections 14(e)(4)(i) and 14(e)(5) proper when an insured producer inadvertently fails to supply some, but not all, of its harvesting or production records to the AIP and the AIP obtains the missing harvesting or production records from third parties such as grain elevators through the independent loss adjustment investigation it is required to perform pursuant to the Loss Adjustment Manual?

In their request, plaintiffs summarized their suggested interpretation as follows:

> The denial of a claim under Sections 14(e)(4)(i) and 14(e)(5) is not proper when an insured producer inadvertently fails to produce some of its

4

> harvesting or production records and the AIP obtains the missing records from third parties through the independent loss adjustment investigation it is required to perform pursuant to the Loss Adjustment Manual.
>
> The denial authorized by Section 14(e)(5) is for those situations where the loss adjustment process results in a finding that there is a complete absence of records necessary to accurately adjust the loss, whether from the insured producer or third parties.

In their request, plaintiffs proceeded to make three arguments in support of their suggested interpretation. First, plaintiffs argued that the loss adjustment process under the Basic Provisions is a cooperative one that involves the AIP, the insured, and third parties, and that third-party documents should therefore be used to adjust a claim. Second, plaintiffs argued that the agency's Loss Adjustment Manual (LAM) indicates that adjusters should use third-party documents to adjust a loss. Third, plaintiffs argued that the term "provide" in Section 14(e)(4)(i) should include the production of documents by third parties with the insured's permission.

In FAD-277, defendants rejected plaintiffs' suggested interpretation. Defendants noted that Section 14(e)(4) clearly states that an insured must provide complete records in order to receive any indemnity under a policy, and that under Section 14(e)(5) a failure to meet that obligation results in a denial of the claim. Defendants further stated that the AIP's obligation to obtain records from third parties is for the purpose of verifying that the insured has provided a complete set of records and not to establish the insured's actual crop production. Defendants stated that plaintiffs' interpretation would render Section 14(e)(5) a nullity because an AIP will only realize records are missing if it discovers them from third parties. Defendants also stated that an AIP is not in a position to determine whether

a failure was intentional or inadvertent, and that the regulation was therefore drafted to give the insured the obligation to provide complete records. Finally, defendants stated that denial of a claim need not be based on a complete absence of records, but rather may be based on an insured's failure to provide complete records.

Plaintiffs first argue that defendants' interpretation in FAD-277 is arbitrary and capricious because the Basic Provisions in 7 C.F.R. § 457.8 set forth a collaborative process (an insured has a duty to cooperate with the AIP); do not impose a deadline for the provision of records or require the insured to provide all records at the same time; and provide for the use of documents from third parties. Why, plaintiffs wonder, would AIPs be told to obtain documents from third parties if they were not supposed to use those documents in the adjustment process. Plaintiffs also note that the Basic Provisions do not explicitly state that an AIP may deny a claim even if it has all documents necessary for adjustment of the claim.

The Court rejects this argument. Whatever the merits of plaintiffs' interpretation, defendants' interpretation of Section 14(e)(5) is not unreasonable or arbitrary. Indeed, Section 14(e)(5) unambiguously provides that if an insured fails to comply with any requirement in Section 14(e)(4) – including therefore the requirement to provide complete records – the claim will be denied. The regulation does not state that the claim will be denied only if the insured provided *no* records; nor does the regulation state that the claim will be denied only if the failure to comply was intentional or knowing. By their interpretation, plaintiffs are essentially seeking to add exceptions that are not found in the

regulation, and defendants acted reasonably in refusing to add those exceptions and in interpreting the regulation in accordance with its plain language.

Moreover, defendants' plain-language interpretation is not necessarily inconsistent with the insured's duty to cooperate and the AIP's duty to obtain records from third parties. The AIP has a duty to investigate a claim by an insured, but the Basic Provisions give the insured the burden to establish its claim (and to provide complete records); thus, defendants reasonably interpreted the Basic Provisions as authorizing the AIP to use third-party records merely to verify the insured's information and not to establish the entitlement to indemnity in the first place.

Defendants' interpretation is also consistent with other portions of the Basic Provisions. For instance, Section 15(b) states that if an insured fails to provide verifiable records of harvested production, no indemnity will be paid. Under Section 21(e), other failures by an insured (to provide access to the crop or farm, to authorize access to third-party records, to assist in obtaining third-party records) will also result in a denial of indemnity.

The Court also rejects plaintiffs' argument that defendants' interpretation in FAD-277 is arbitrary and capricious because it is inconsistent with the LAM. Plaintiffs note that the LAM instructs AIPs adjusting claims to verify or determine the insured's actual harvested production, including by considering documents obtained from third parties. Plaintiffs especially rely on the LAM's provisions regarding corrected claims (LAM § 1238). For instance, the LAM states that one instance in which a claim may be corrected is when the insured failed to report all production from a unit. In addition, in the event of

a corrected claim, the adjuster is to submit a report containing certain information, including the insured's explanation for reporting incorrectly and a determination whether the insured deliberately withheld or concealed information. Plaintiffs argue that these provisions of the LAM suggest that third-party records may be used to correct or remedy an insured's failure to provide complete production records. They also argue that these provisions, which call for a determination of intent, contradict defendants' rationale that an AIP is not in a position to determine whether a failure was inadvertent.

Defendants did not specifically address these provisions of the LAM in FAD-277. Nevertheless, it was not arbitrary to rely solely on the regulations and not on the LAM, which is an internal manual and does not have the force of the regulations. *See e.g.*, *JPM-RDP Farms, LLC v. United States Dept. of Agriculture-Risk Mgmt. Agency*, 2018 WL 1167325, at *12 (M.D. Fla. Mar. 6, 2018) (case is governed by the regulation, not the LAM, an internal manual). Plaintiffs argue that Section 14(i) of the Basic Provisions incorporates the LAM by reference, thus giving it equal weight. Section 14(i), however, states only that AIPs "recognize and apply the loss adjustment procedures established or approved by the [FCIC]." *See* 7 C.F.R. § 457.8 sec. 14(i). That provision does not purport to incorporate all such procedures by reference into the regulation, or to give any particular additional terms the force of law. Plaintiffs have provided no authority supporting its argument for incorporation of the LAM by reference. Nor does the LAM purport to be an interpretation of the regulations, such that FAD-277 might be considered an unjustified change in interpretation of Section 14(e).

In addition, FAD-277 is not necessarily inconsistent with the portions of the LAM cited by plaintiffs. Plaintiffs' request for an FAD did not present the situation of a corrected claim. Moreover, the fact that a claim may be corrected after an insured initially failed to provide complete information does not mean that the corrected information need not ultimately be provided by the insured. Indeed, the LAM (§ 901) acknowledges that the insured is required to provide complete records.

Although plaintiffs did not make this argument in making its request for an FAD, plaintiffs now argue that FAD-277 is inconsistent with a previous interpretation, FAD-18, and that defendants acted arbitrarily and capriciously by changing their position without justification. The Court rejects this argument as well. FAD-18, issued in 2003, interpreted a provision in 7 C.F.R. § 457.7 which stated as follows: "No indemnity shall be paid unless the insured complies with all terms and conditions of the contract." Defendants stated as follows in FAD-18:

> [FCIC] agrees that section 457.7 requires an insured to comply with all policy provisions before an indemnity is paid. In addition, section 14(a) of the Common Crop Insurance Policy (Basis Provisions) (7 C.F.R. § 457.8) requires compliance with all policy provisions before an indemnity is paid. Failure to comply with the policy requirements constitutes a breach of the insurance contract and could jeopardize receipt of any indemnity if such breach is determined to be substantive. For example, if the breach results in the inability to accurately determine the amount of loss or whether a loss occurred, then no indemnity could be paid.
>
> However, when failure to comply with a provision is determined to not affect the amount or existence of a loss in any way, or when the policy provides a remedy for the failure to comply with a policy term, then an indemnity may still be paid. For example, section 3(c) of the Basis Provisions requires the insured to report production for an insured crop by a certain time, but this section also states a yield will be assigned if the insured fails to comply with

9

> the requirement. In this case, although the insured did not fully comply with a policy provision, an indemnity could still be paid.

Thus, plaintiffs argue, under the previous interpretation of Section 14 of the Basic Provisions, indemnity would be denied only if the breach is substantive, in the sense that the ability to determine the loss has been affected. Plaintiffs further argue that in the scenario it presented to defendants, the loss could still be adjusted using the third-party records, and FAD-277's interpretation requiring denial of the claim therefore represents a change in position.

The two FADs are not necessarily inconsistent, however, because defendants were interpreting different regulations in those two instances. A different set of Basic Provisions was in effect when FAD-18 was issued in 2003. At that time, Section 14(a), cited in FAD-18, merely stated, as a duty of the AIP, that if the insured has complied with all policy provisions, the AIP would pay the loss within a certain time frame. *See* 7 C.F.R. § 457.8 sec. 14(a) (second (a)) (2003). FAD-18 did not interpret any provision that called for the *denial* of a claim in certain circumstances, however. The Basic Provisions have been amended multiple times since 2003, and Section 14 now explicitly and unambiguously states that a claim will be denied if the insured has not satisfied certain requirements, including the requirement to provide complete records. Because defendants were interpreting materially different regulations, FAD-277 does not represent an unreasoned departure from their previous interpretation.[1]

---

[1] In addition, the failure to provide complete records is not similar to the example given in FAD-18, in which the policy specifically provided for a particular remedy. The Continued…

Finally, plaintiffs argue that an insured's duty to "provide" records as set forth in Section 14(e)(4)(i) should be interpreted to include the situation in which records have been obtained from third parties because the insured must have authorized the release of those records. Thus, plaintiffs argue that an insured has satisfied that duty to "provide" records even when the complete set of documents has come at least in part from third parties.[2] The Court cannot conclude, however, that defendants interpreted the regulation in an arbitrary or capricious or unreasonable manner in interpreting Section 14(e)(4) to require the insured to submit the records itself.[3] Moreover, defendants' interpretation appears to be consistent with Section 21 of the Basic Provisions, which states that the insured, by applying for the insurance, has authorized the AIP and defendants to obtain records from third parties, and which requires the insured to assist in obtaining such records. *See* 7 C.F.R. § 457.8 sec. 21(d). Section 21 further states that the failure to provide access to the crop or farm or to authorize access to third-party records or to assist in obtaining such records will result in a denial of indemnity. *See id.* sec. 21(e). Thus, the Basic Provisions have addressed separately the provision of records by the insured and the authorization by the insured of

---

failure to provide records naturally affects the AIP's ability to adjust the claim, and the current regulation specifically provides for denial in that situation.

[2] In FAD-277 defendants did not specifically address the meaning of the word "provide"; they made clear, however, that they were interpreting the regulation to mean that an insured does not satisfy its obligation by reference to documents obtained from third parties.

[3] The Court does not read FAD-277 as necessarily foreclosing the possibility that the insured has properly provided records by having them delivered by a party within its control (such as its attorney or other agent). In their request for an FAD, plaintiffs did not present the situation in which the referenced third parties were necessarily within the insured's direct control.

access to third-party records. Indeed, under plaintiffs' interpretation of "provide", Section 21(e) would be superfluous as it relates to the failure to authorize access to third-party records, as such a failure would already be addressed by Sections 14(d) and 14(e).

As noted above, the Court must defer to defendants' reasonable interpretation of the Basic Provisions, and that interpretation need not be the best or only interpretation. In this case, defendants, in interpreting Section 14 of the Basic Provisions, did not act arbitrarily or capriciously in interpreting the regulation in accordance with its plain language to require a complete provision of records by the insured, whether or not the AIP has obtained records from third parties. Accordingly, the Court will not set aside FAD-277 as requested by plaintiffs, and judgment will be entered in favor of defendants in this matter.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' Final Agency Determination (FAD-277) shall not be set aside, and judgment shall be entered in favor of defendants in this matter.

IT IS SO ORDERED.

Dated this 14th day of June, 2019, in Kansas City, Kansas.

s/ John W. Lungstrum<br>
John W. Lungstrum<br>
United States District Judge